2254

MOTION (13 Pgs)

NOTICE TO THE COURT
2 PGS

UNITED STATES DISTRICT COURT OF RHODE ISLAND (1ST CIRCUIT)

Hasim Munir (Plaintiff)

    vs

PAUL A Suttell (Defendant)        CASE NO: _____
Chief Justice of Rhode              RE:
Island Supreme Court              RE:

## NOTICE TO THE COURT

    Now Comes the Plaintiff, Hasim Munir, in PROSE in necessity, to give NOTICE TO THE COURT of the prooffered Documentation that will FACTUALLY PROVE the FOLLOWING Affidavited statement as TRUE by penalty of penjury pursuant to 28 U.S.C. 1746. The Conviction of P1-2016-2489A has NO Police report, NO WARRANT of Arrest, NO Arrest, and no record of ARRAIGNMENT/Appearance. Rule 3, 4, and 5 of RI Criminal Procedure was fabricated by States Attorney Shannon Signore & Kathyn Tracey. The Court Venue was also fabricated on the Document as the proceeding was HELD IN NEWPORT. (7)seven years Hasim Munir has been Convicted of A Capital Offense Never reported to Any Rhode Island Law Enforcement especially Providence. NO Court has Subject-matter jurisdiction over his BODY to STAY IN PRISON. RI Supreme Court is Attempting To COVER-UP THIS FACT by Inadequate COUNSEL and COURT filings.

MISCARRAIGE OF JUSTICE IN RHODE ISLAND JUDICIARY comes FROM IGNORING

CLEAR CONSTITUTIONAL PRECEDENT CASE LAW From U.S. Supreme Court.

Plaintiff want this Court to be informed that even in light of

the Documents that FACTUALLY prove SERIOUS FOURTH AMENDMENT

VIOLATION for (7) Seven Years.

RACE is A promblem in the purposely inadequate Court appointed,

Public Defenders, Private paided Attorney's violate NINTH

Amendment Right of their clients Daily.

This Denies the Sovereign 10th Amendment Rights Reserved by the people

and it establishes Guarantee's.

Take those Guarantee's away with NO Supervisory disciplinary oversight

you have the FACTORS of this 28 § 2254 Habeas Proceeding.

Hasim Munir #515391
P.O. Box 8273
CRANSTON, RI 02920

Dated: 4/25/2023

Certification of Service

I certify that A copy has been sent to RI Supreme Court General Counsel Justin Cornenia
Clerk debra Sayders, and Chief Justice Paul A Suttell 250 Benefit street (7th Floor)
Providence, RI 02903, U.S. District Court of Rhode Island 1 Exchange Terrance
Providence, RI 02903.

UNITED STATES DISTRICT COURT OF RHODE ISLAND (1st Cir.)

Hasim Munir (Plaintiff)

VS

STATE OF RHODE ISLAND's
 Supreme Court Chief Justice
   PAUL A SUTTEL (Defendant)

CASE NO _____

RE:
RE:

PLAINTIFFS MOTION FOR VIOLATION OF 1st AMENDMENT RIGHTS
CRIMINAL PROCEDURES, CIVIL PROCEDURES, AND BASIC HUMAN RIGHTS
AS NO POLICE REPORT, NO WARRANT FOR ARREST, RECORD OF ARREST, OR
NO ARRAIGNMENT IN PROVIDENCE DISTRICT EVER FOR THIS CONVICTION
DOES NOT EXIST VIOLATING 13TH AMENDMEND DULY CONVICTED

NOW COMES ; Hasim Munir, in PROSE, in necessity pursuant to 28 § 2254 / 1983 violation of Civil Rights depriving Plaintiff of Guaranteed U.S & R.I. Constitutional Rights, Basic Criminal Procedures [(3),(4),(5)], Human Rights, and RI Judicial Power.

Plaintiff asserts Employee's of RI Supreme Court are violating his 1st Amendment Right to "Petition Government for redress". Chief Judge Paul A Suttel is wholely responsible for the temperamented environment of his Court its A Racist Atmosphere leading to mis interpretation of U.S. Constitution in Judgements.

CERTIFICATION OF SERVICE
I certify that a copy has been sent to General Counsel of RI Supreme Court and Paul A (Chief Justice) 250 Benefit Street (4th Floor) Providence, RI 02903 and U.S. District Court of Rhode Island (1st Cir.) 1 Exchange Street Providence, RI 02903

# RHODE ISLAND SUPREME COURT'S OBLIGATION

The Supreme Court consists of a Chief Justice and four Associate Justices. As the court of last resort, the Supreme Court is the final interpreter of state law. The Supreme Court is the final appellate jurisdiction over questions of law and equity, supervisory powers over other state courts. (RI District & Superior) and general advisory responsibility to the legislative and executive branches of state government concerning the constitutionality of state laws.

<u>Regulating Admissions to the Rhode Island Bar and disciplining it's members are also responsibilities of the court.</u>

Next <u>FOUR PAGES</u> WILL SHOW HOW RI SUPREME COURT covers up (Obstruction of Justice) violations of Chief Prosecutor to Criminal Department of Attorney General office, Has not been disciplined or fired for the misconduct NOR will other cases be reviewed. LAST <u>TWO PAGES</u> SHOW RI JUDICIAL POWER OF SUPREME COURT IS NOT RESPECTED BY ONE OF THE 3 OLDEST SERVING JUDGES. JUDGE ROBERT KRAUSE TELLS THE SUPREME COURT JUSTICES WHAT TO DO THEY ARE SUBJECT TO HIM. 4 CURRENT DISMISSALS IN THEIR COURT BY JUDGE ROBERT KRAUSE 4. HE HAS NOT BEEN DISCIPLINED EITHER BY THIS COURT.

(i)



# Plea deal in murder case questioned

### Report: Defendant had sex with girlfriend while in AG's custody

**Katie Mulvaney**
Providence Journal
USA TODAY NETWORK

WARWICK – Priscilla Mello remains despondent that some of the men who killed her son walk free just years after they played a role in slaying the 36-year-old father of three before dismembering him and throwing his body parts into the ocean.

"I didn't think any of them got enough time," Priscilla said in a recent interview in her Warwick home, with her other son, Wesley, across the kitchen table, equally distraught.

New revelations about the case have added to the family's horror and grief. A recently disclosed state Department of Corrections investigation concluded that one of the men who participated in killing Kerry Mello had sex with his girlfriend in the attorney general's office at the Licht Judicial Complex while in state custody as a state prosecutor and state trooper stood by. The family now wonders if the desire to keep that alleged encounter under wraps influenced the plea deals the state reached with the defendants, at least one of whom – the man who met with his girlfriend – walked out of the courthouse at sentencing.



Mello

"Now, I feel like I've been revicti-

44A | SUNDAY, JANUARY 22, 2023 | PROVIDENCE JOURNAL

# Murder case

Continued from Page 1A



"Did he ask for mercy?" Priscilla Mello asked the defendants at the sentencing, seated with their hands shackled a few feet away. "Did he ask for God? Did he ask for me? What were his last words?"

Priscilla Mello holds a photograph of her son Kerry Mello at Superior Court in Warwick in 2018.
THE PROVIDENCE JOURNAL/FILE

She believes, as she puts it, that she was "sold a bill of goods" when she says Assistant Attorney General James Baum convinced her to agree to sentences that she and her family thought were too lenient. Baum, now a deputy chief of the attorney general's criminal division, raised the possibility that her son's killers might go free at trial, though there were two cooperating witnesses set to testify, she and Wesley say.

"I think they were duplicitous," Mello said.

### How did a defendant purportedly have sex with his girlfriend in a prosecutor's office?

A spokesman for Attorney General Peter F. Neronha's office acknowledged that in 2017, before Neronha's administration took office, a defendant in the Mello case – Graig Bustillo – was brought into the courthouse to meet with the prosecution to discuss the case.

"At that time, the prosecution team inadvisably afforded the defendant a brief period to meet alone with family members. The current administration has made it explicitly clear to all members of the criminal division that this practice – to the extent it has happened in the past – is strictly not permitted," spokesman Brian Hodge said in an email.

The case was prosecuted by Assistant Attorneys General Baum and Timothy G. Healy, with Rhode Island State Police Detective Adam Kennett leading the investigation, according to court records.

Baum declined to comment.

It is not uncommon for incarcerated witnesses to meet with law enforcement and prosecutors during the prosecution of a criminal case.

It is the protocol of Neronha's administration that the witness always be supervised by and in the immediate presence of law enforcement, except for allowing the witness to confer privately with his or her lawyer, Hodge said.

"In reviewing the history of the case, it is our understanding that this incident had no bearing on dispositions of the cases of three additional defendants," Hodge said.

### The Kerry Mello murder case

The Mello family put calls out in August 2015 that Kerry Mello, an electron-

suspects with the understanding that it cannot be used against them in court.

### How was the incident discovered?

It's against that backdrop that then-state Department of Corrections Investigator Joseph Forgue received a tip that a known gang member appeared to have FaceTimed with his father, Bustillo, during the daytime hours of May 3, 2017. At the time, Bustillo was being held at the Adult Correctional Institutions' intake service center as he awaited sentencing and potentially testifying against his co-defendants in the Mello murder case.

Forgue checked Bustillo's status for the day and learned that he had been at Providence County Superior Court until 4:55 p.m. He began monitoring Bustillo's phone calls at prison. It became evident that he'd had physical, sexual contact with a female at court, the investigative report said.

"It was my impression clearly, by the conversation, that they had sex," Forgue said in a recent interview.

### Report details the encounter and investigation

Bustillo and his girlfriend spoke of being nervous at first after the prosecutor, state police detective, and Bustillo's mother and cousin left them alone in a room, according to the report.

denied having sexual contact with his girlfriend.

Forgue reached out to the sheriffs division Capt. Jason Allaire whose deputies transport prisoners to and from prison and oversee courthouse security.

Allaire stated that Bustillo had been ordered to court for a "free talk" with his lawyer, James, Assistant Attorney General James Baum, and state police Detective Adam Kennett. He said he had no knowledge of any breaches in security during which Bustillo and his girlfriend were left unattended.

Forgue interviewed Bustillo a second time, and again he would not explain the comments he made to his girlfriend during the phone call, the report said.

He contacted Kennett, who remained "stoic" with "no cooperation," said Forgue, who retired last year after more than three decades with the department.

Forgue reached out to Baum, of the attorney general's office. Baum described Bustillo as a cooperating witness, explaining that it was "common practice to allow cooperating witnesses personal time with families and loved ones during these interviews," according to the report.

Baum confirmed to Forgue that Bustillo was left alone with his girlfriend after he, Kennett and James were done speaking with him. Baum said he remained outside the door and that the room was quiet, the report said:

them in the control of the attorney general's office and another investigating agency.

"We don't remain in the room," said DeCesare, who has led the sheriffs division since 2013.

Forgue found it very concerning that Bustillo had been out of the authorities' eyeshot.

"Who knows what he was going to do with that phone call?" Forgue said. "We don't know if he was handed drugs or contraband from his girlfriend."

Forgue has never encountered a similar incident, he said.

"I don't know what the trooper or Jim [Baum] were thinking," Forgue said. "I don't know how that arrangement came to be."

Forgue said that he and others expected fallout.

"We said, 'This is not going to be good for somebody in the end,'" Forgue said.

Richard Ferruccio, president of the Rhode Island Brotherhood of Correctional Officers, said he was not aware of the investigation.

"Wow, that's a horrible thing to allow to happen. We never let them out of sight," he said.

Rhode Island State Police Lt. Col. Robert Creamer referred all questions to the attorney general's office.

Hodge, spokesman for the attorney general's office, said that they could not determine "with certainty" what protocols were in place at the time in question and whether the manner in which this defendant's matter was handled by

The Mello family put calls out in August 2015 that Kerry Mello, an electronics buff with a quick wit and sharp style, had gone missing after being last seen by his girlfriend on Aug. 10. They alerted the Providence and Cranston police and stirred up news coverage. Priscilla wrote a letter to Cranston Mayor Allan Fung.

"I kept saying my son's missing," Priscilla said.

Days later, a fisherman found a torso slashed with knife cuts in the water near Westport, Massachusetts. Two severed legs were discovered on Goosewing Beach in Little Compton. The remains were identified as belonging to Kerry Mello.

In April 2016, Attorney General Peter F. Kilmartin's office joined the Rhode Island State Police in announcing the indictment and arrest of four men in Mello's murder: Jamie Barriera and his father, Albert; Francisco Concepcion; and Graig Bustillo. The men were charged with murder, conspiracy to commit murder, and mutilation of a dead human body.

Several months later, Louis Geremia, the Barrieras' family friend, was also charged.

Authorities said the men turned on Mello after being robbed of 30 pounds of marijuana and $10,000. They pegged Mello as the culprit and lured him to Albert Barriera's house in Warwick on Aug. 10, 2015. There, Jamie assaulted and killed him.

Mello's body was cut to pieces with a handsaw, wrapped in a tarp and driven to the Warwick marina, where Jamie Barriera kept a power boat.

The Barrieras and Concepcion headed out to sea, where they dumped the body. Bustillo drove Mello's car to Boston to throw investigators off.

The state police later said that Mello had no role in the theft.

"He didn't steal your [expletive]. You killed the wrong friggin' person," Wesley Mello said.

Bustillo quickly reached a deal to cooperate with state prosecutors in exchange for a sentence ranging from two to 10 years, according to his lawyer, Richard James. Concepcion also agreed to cooperate.

The case proceeded through Superior Court, with the prosecutors and defense lawyers trading disclosures and discovery, including the outlines of "free talk" discussions prosecutors had with cooperating witnesses. Free talks are typically statements given to the prosecution by

room, according to the report.



Former Assistant Attorney General James Baum, now a deputy chief in the AG's criminal division, has declined to comment on allegations that one of the men who participated in killing Kerry Mello had sex with his girlfriend in the attorney general's office at the Licht Judicial Complex while in state custody. KATHY BORCHERS/THE PROVIDENCE JOURNAL/FILE

"But I was like, 'Oh my God, this is about to go down in a few minutes' when everybody started leaving," the woman said.

"Yep," Bustillo said.

"But once your mom walked out the door I closed that. Gone. Forget it. Got right to it," she said.

"Hell yeah," he said.

"I knew exactly what I wanted. I wanted to see it," she continued.

"I'm good for another year," Bustillo said.

Bustillo spoke of being sore and hampered by having his hands restrained. They agreed not to tell anyone.

"We were walking away, I was like damn, I felt weird because the attorney general, they know, they probably were looking at me like, 'She's a [expletive] slut,'" she said.

"What was your favorite part?" Bustillo asked.

"When we were on the floor," she said.

Forgue questioned Bustillo and learned that he'd met with his lawyer, James, the state prosecutor and the state police at court to discuss the details of his plea agreement and testimony in the Mello trial, the report said. Bustillo's mother, girlfriend and cousin were also present.

Bustillo told him that the three officials had left the room, as did his relatives, leaving him alone with his girlfriend for no longer than 10 minutes. He

"Inmate Bustillo' was allowed to be left alone [with his girlfriend] for approximately 25 minutes inside the interview room," Forgue concluded in his report.

"Even though Inmate Bustillo was still handcuffed, [his girlfriend] removed her clothes and the two participated in sexual relations .. During this period, Inmate Bustillo also used the cell phone to call his son," Forgue wrote.

"Since Inmate Bustillo was allowed to conduct the unauthorized activities, he was not internally disciplined for his action," the report continued.

### 'We lost our minds.'

"We lost our minds. I could not believe that people of that caliber of authority allowed that to happen," Forgue said in an interview.

Corrections protocol calls for officers to keep their eyes on people in custody 24-7, even if that requires them to watch an individual during surgery, he said.

"It's always a fear they might plan an escape or get contraband in," Forgue said. "The safety and security of everybody involved is why you maintain constant visual contact."

Chief Sheriff David DeCesare said that an inquiry from The Journal was the first time he had heard about the investigation. He said that inmates are frequently ordered to court for "free talks," during which his sheriffs leave

and whether the manner in which this defendant's matter was handled by prosecutors in 2017 violated any protocols, because the encounter took place under previous leadership.

"As previously stated, this administration's view is that when a defendant is brought to a location to meet with prosecutors and law enforcement, the witness must always be supervised by and be always in the immediate presence of law enforcement, except for allowing the witness to confer privately with his/her attorney. That is plainly best practice, and it is the policy of this administration. All prosecutors have been reminded of this policy and directed to follow it," Hodge said.

"With respect to any employee disciplinary action by this office under this or any administration, such actions are personnel matters, which we do not comment on," Hodge added in response to inquiries about whether any disciplinary actions were taken.

Corrections spokesman J. R. Ventura emphasized in an email that department officers and staff were not part of the custodial detail for this court visit.

"The Rhode Island Department of Corrections turns over custody of an offender to the Rhode Island Sheriff's Department for transportation for court appearances. Once there, the Sheriff's Office, as well as the agents of the court, take custodial responsibility of the offender," Ventura said in an email.

Offenders are expected to behave in accordance with the Rhode Island Department of Corrections rules and regulations for inmate conduct while being transported, he said.

"Inmates that are on an outside facility furlough or are out of our custody for court purposes are subject to the same discipline policies set forth in Code of Inmate Discipline Policy," Ventura said.

The code prohibits any touching, such as hugging and hand holding, and bars inmates from willingly engaging in sexual acts with others.

Ventura said he could not speak about the specifics of the Bustillo report.

### Did the incident affect the outcome of the murder trial?

James said that "to my knowledge" his client was never without handcuffs and that he had not been informed of the corrections investigation.

Continued on next page

Continued from previous page

He denied that the corrections report influenced the outcome of the case, noting that the plea deal terms were reached shortly after his client's arrest.

Defense lawyers representing Bustillo's co-conspirators said they were aware of the corrections investigation, but those who were reached declined to comment, citing attorney-client privilege and the sensitivity of the issue.

Michael DiLauro, a longtime assistant public defender who recently retired, said the investigative report should have been included in discovery in the Mello case, meaning that Bustillo could have been questioned by defense lawyers about the alleged liaison with his girlfriend if the case had gone to trial.

"It's discoverable all day long," DiLauro said. "If you don't ask for it, you might never get it."

Evidence of promises, rewards and inducements received by a cooperating witness facing criminal charges is always admissible at trial and can be used to prove bias, prejudice or motive by the witness to fabricate testimony, DiLauro said.

While lawyers often probe witnesses about prosecutorial leniency or other benefits they might have received in exchange for their testimony, that questioning rarely veers into sex acts.

DiLauro could only recall one other instance in Rhode Island in which a cooperating witness's access to sex came into play. That, he said, was the sensational Peter Gilbert affair.

Gilbert was a star mob informant and admitted murderer who lived in Providence police custody at an apartment at headquarters for nearly three years with his wife and children. An investigation eventually revealed a pattern of bad judgment by law enforcement into a "fiasco" that included breaches, such as allowing him access to a prostitute while roaming the cellblock, drinking beer with officers while cruising the city, trips to Florida, and skydiving jaunts to Connecticut without oversight.

Gilbert's testimony led to a string of convictions, including that of Gerald S. Mastracchio Jr., for the murder of 13-year-old Richard J. "Ricky" Valente.

Revelations about Gilbert's handling, however, led Mastracchio, one of Rhode Island's most notorious criminals, and others he testified against, to challenge their convictions. Gilbert was the only person who implicated Mastracchio in the death of Valente, whose body was



Four people were charged with murdering Kerry Mello, of Cranston. They were, from left, top row: Francisco Concepcion and Albert Barriera. Bottom row, from the left: Graig Bustillo and Jamie Barriera. Several months later, Louis Geremia, the Barrieras' family friend, was also charged. PROVIDED BY BIANCA BUONO/ABC6 PROVIDENCE

found washed up on the shore in Jamestown four days after he disappeared.

A Superior Court judge overturned Mastracchio's murder conviction, saying that Gilbert's testimony about the conditions of his confinement by Providence police was "false and misleading," and that some police officers knew the truth but kept quiet. The state Supreme Court later reinstated the conviction.

**Family signed off on the plea agreement, with reservations**

Priscilla recalls being given a day to decide whether to accept plea agreement terms in September 2018 and being gripped by the fear that her son's killers might walk.

"They could have told me anything. I was so upset about my son," she said.

Baum presented the family with concerns that Bustillo might not follow through with his cooperation deal at trial, she and Wesley said.

"They said it was better to get 10 years

than to get nothing. As a mother, someone had to pay for it," Priscilla said.

Priscilla signed off on the deal, but the family was not happy as Superior Court Judge Daniel A. Procaccini accepted the sentencing agreements on Sept. 10, 2018.

Under state law, the sentencing range for second-degree murder is 10 years to serve, up to a maximum of life in prison. A person convicted of mutilating a dead body can face up to three years behind bars.

Jamie Barriera, 42, pleaded no contest to second-degree murder, conspiracy and mutilation of a dead body in the death of Kerry and was sentenced by Procaccini to 70 years in prison, with 35 to serve.

Barriera's father, Albert Barriera, 68, pleaded no contest to charges of conspiracy to commit felony assault and mutilation of a dead body, and was sentenced to serve 10 years in prison. The Barrieras remain held at the Adult Correctional Institutions.

Louis Geremia, 68, the family friend, pleaded no contest to conspiracy to commit felony assault, and was sentenced to serve four years in prison, with another six years suspended. All were given credit for time served.

To Wesley, the sentences were not long enough.

"How can any of you not be appalled?" he asked at the sentencing hearing.

At the sentencings, Priscilla spoke of questions that had haunted the family since Kerry disappeared.

"Did he ask for mercy?" she asked the defendants, seated with their hands shackled a few feet away. "Did he ask for God? Did he ask for me? What were his last words?"

Jamie Barriera, who met Kerry in high school at Cranston East, had sent flowers and offered her condolences on Kerry's death – before the Mellos knew he was responsible.

Judge Procaccini declined to comment about the sentencings.

In October 2018, Superior Court Judge Bennett Gallo sentenced Bustillo to 10 years, with 2½ years to serve and the remainder suspended with probation at the state's recommendation. He was given credit for the time he'd served since his arrest and walked out of the courthouse.

"He walked out of court with his mom," Priscilla said last week.

Bustillo, who is now 46, could not be reached for comment.

Days later, Concepcion received his sentence from Superior Court Judge Brian Stern. At the state's recommendation, he received 60 years, with 20 to serve, for second-degree murder. He continues to be held.

Kerry's ashes remain at the Perry-McStay Funeral Home as the family begs the killers to tell them the whereabouts of his head, the family says.

"That's all I ask for. At least have the decency to give us that," Wesley Mello said last week. "Let me bury mine."

Priscilla continues to urge the state Parole Board to keep the men locked up.

"First of all, I say to them they didn't get enough time. I say that they shouldn't get out," she said.

Questions linger for the family about the handling of Kerry's case as they remain convinced that his killers were extended leniency they didn't deserve. They wonder if the corrections investigation factored in.

"Is this standard protocol if they want to get state's evidence?" Priscilla asked. "It can affect someone else's case if this is how they make deals."

journal.com

SUPREME COURT

# Court: Man given 63-year sentence can argue for relief

**By Katie Mulvaney**
Journal Staff Writer


Hernandez

PROVIDENCE — The state Supreme Court has given a Cranston man serving time for assaulting and terrorizing prostitutes in the mid-1990s another chance to seek to get his sentenced reduced.

The Supreme Court overturned a 2010 ruling by Superior Court Judge Robert D. Krause dismissing Ricardo "Ricky" Hernandez's application for post-conviction relief.

The court found that Hernandez had not been provided a "meaningful" opportunity to respond to Krause's proposed dismissal of his effort to reduce the 63-year term he is serving for assaulting three women, two of whom were prostitutes.

Warwick police arrested Hernandez in January 1996 after an investigation into a report that a woman was raped and shot in the eye with a pellet gun in the industrial area of Apponaug.

The police linked that shooting to a sexual assault that had occurred a month before in the same area. The victim of that assault later identified Hernandez as her attacker.

The police then linked Hernandez to the assault of another woman earlier in Providence.

A jury in 1998 found Hernandez guilty of one count of first-degree sexual assault, two counts of second-degree sexual assault and one count

of each of assault with intent to commit murder, assault with intent to commit robbery, illegal possession of a firearm and assault with a device similar to a firearm. Krause sentenced Hernandez to serve 63 years in prison for his crimes.

In 2008, Hernandez filed an application for post-conviction relief. Krause appointed Michael Zarrella to represent Hernandez. Zarrella, who did not return a phone call Monday, asked to be removed from the case, arguing that Hernandez's application was "wholly frivolous, without merit, and neither supported by existing law, nor by a good faith arguments for the extension, modification, or reversal of existing law."

Krause agreed to take Zarrella off the case, and informed Hernandez that if he chose to continue to pursue his claims, he would have to do so without a court-appointed lawyer, Justice Francis X. Flaherty wrote on behalf of the court. Hernandez informed Krause that he believed that he was still entitled to counsel and that he should not be charged with attempted murder because the weapon he used was a BB gun.

"I feel that I still have a case for post conviction. And, Judge, I feel that I was — you know, the lawyer did not do a good job in

investigating my case. The fact that I was charged with attempted murder with a BB gun should have been anything — should have been something of assault with a dangerous weapon instead of attempted murder. I have never heard of a case where a person died as a result of a person getting shot by a BB gun. That's ludicrous within itself. So, I mean, anybody that would say I don't have a case, that's ludicrous," the high court quoted from a transcript of the proceedings.

"That argument is wholly and totally without merit," Krause said, adding that the issue had not been raised at trial. Krause denied Hernandez's application.

The Supreme Court credited Zarrella for the thoroughness of his review, but noted that Zarella's role, based on court precedent, was not to assess the merit of Hernandez's claims, but to be an advocate for his client.

"[T]he description by counsel of his belief as to his role in this case leads to the inevitable conclusion that he was not acting as a zealous advocate, despite the meticulous nature of his work. Therefore, we are constrained to hold that Hernandez was not afforded a full, fair, and counselled opportunity to present his claims before the hearing justice determined them to be meritless," the high court wrote.

The high court in 2003 upheld Hernandez's convictions.

## STATE OF RHODE ISLAND

PROVIDENCE, SC.                                                    SUPERIOR COURT

HASIM MUNIR                                    :
                                               :
    VS.                                        :                PM/19-10028
                                               :
STATE OF RHODE ISLAND                          :

### <u>ORDER DISMISSING APPLICATION FOR POSTCONVICTION RELIEF</u>

    Consistent with the Court's colloquy with Hasim Munir in open court on November 21, 2022, the above-captioned application for postconviction relief is dismissed with prejudice.

ENTER:                                         BY ORDER:

_____               _____
Robert D. Krause                               Clerk
Associate Justice

Dated: _____

cc:    Judy Davis, Esq., Office of Attorney General, 150 South Main St., Providence, RI 02903
      Hasim Munir, P.O. Box 8273, Cranston, RI 02920

Supreme Court

No. 2022-281-M.P.

Hasim Munir                              :

v.                                       :

State of Rhode Island.                   :

### O R D E R

The petitioner's "Writ of Prohibition/Preliminary Injunction", as prayed, is denied.

The relief sought in the petitioner's "Notice to the Court/Rule 23", as prayed, is denied.

The petitioner's "Motion to Release in Criminal Case/Rule 9", as prayed, is denied.

The relief sought in the petitioner's "Failure to Respond Rule 18A(2)(4)", as prayed, is denied.

This matter shall be closed.

Entered as an Order of this Court this  *25th* day of *November 2022.*

By Order,

*/s/ Debra A. Saunders*
Clerk

(v lii)

Introduction

R I Supreme Court Avoids perjured testimony, fabrication of DNA Evidence, fabrication by witness testimony, coercion of A Key State witness, fabrication of Police Reports, WARRAnts (legally void), Double Jeopardy, ARRest (illegal), ARRaingment Fabricated, and fabricated documents and confessions (Miranda violations). (purposely Misinterpreting LAW)

They have Refused Hasim Munir access PROSE to R I Supreme Court Review by Judge in Denying his Appeal by "CLERKS Decision" not A "JUDGE". (Clerk Debra A Saunders) (viii pg)

pgs (ii) — (vi) show that Rhode Island Supreme court does not Discipline Prosecutors, or Judges Misconduct of Professional conduct.

Chief Paul A Suttell is AWARE of A UNLAWFUL ARRest, LEGALLY VOID TRIAL/CONVICTION; And All other Appellate procedures in Hasim Munir vs Rhode Island # SU-2023-0015 MP

The Court will Review that PROVIDENCE POLICE CHEIF AND ATTORNEY GENERAL OF RHODE ISLAND OPEN Government have Investigated to verify HAsim Munir is ILLEGAL IMPRISONED.

Indictment P1-2016-2489A has NO POLICE REPORT, NO WARRANT OF ARREST, NO ARREST RECORD/BOOKING, and NO ARRAIGNMENT IN PROVIDENCE DISTRICT COURT. violating Criminal Rules and Procedure Rule 3, 4, and 5.

—1—

# Introduction

Hasim Munir has been Illegally Detained, Issued Bail by A Court with NO LEGAL Authority, No contact order Issued by A NON-Judicitional Court; Indicted by this Fraudulent Arraignment; Presented at TRIAL with a Jury; Convicted and Sentenced; Deny Miranda Rights by RI Supreme Court Justices, awaited 3 years for POST-CONVICTION Hearing, Denied A Hearing for post-Conviction Hearing 4 years after filing 2019 to present NEW EVIDENCE (ALIBI). Now Hasim Munir's Court Appointed Attorney CARL RICCI has refused to file A RULE 9 Motion Release from Custody. (email messages)

CARL RICCI refuses to file A Complaint with Discipline board as Attorneys Are require by RULE 8.3. to report Misconduct in violation of RULE 8.4. 8.3. Reporting professional misconduct 8.4. Misconduct

This Rhode Island Supreme Court has directed this Court Appointed Attorney to be Inadequate and not bring up the ONLY Issue in the beginning of Case# PI-2016-2489A.

On August 22nd 2016 Hasim Munir was never Arrested by A Law Enforcement Agency in Any Rhode Island Cities, towns, or Municipalities. The ONLY WAY Chief Judge Paul A Suttell will Review this UNLAWFUL ARREST is by LAWSUIT. Paul A Suttell does not correct his STAFF instead he encourages this UNCONSTITUTIONAL Behavior otherwise this would seize to be Procedure (see pg viii) Clerks denying Motions like Judges.

— 2 —

# Introduction

Hasim Munir's complaint will Show that his 1st Amendment Rights to "Petition Government for Redress in A Grievance" is being currently violated by A Inadequate RI Supreme Court employee's and Appointed Counsel. This Constitutional issue has subjected him to Direct violation of the 13th Amendment "DULY CONVICTED" clause and Other U.S. & RI Constitutional Rights, Federal & Rhode Island criminal Rules and Procedures RULE 3, 4, and 5 and Human Rights Treaty (Declarations of Human Rights) violations. Hasim Munir will present to this First Circuit U.S. District Court that for 7 Seven years the Following is LEGAL FACTS:

1) NO POLICE REPORT for this Conviction of 1st Degree Child Molestion §11-37-8.1 R.I.G.L in 2016 "DOES NOT EXIST AT ALL!"

2) NO ARREST WARRANT for the Aboved statue §11-37-8.1 R.I.G.L naming Hasim Munir as A Suspect in 2016 for a 1st Degree Child Molestion in 2016 DOES NOT EXIST AT ALL!

3) NO ARREST RECORD/BOOKING from the Aboved WARRANT issued by A Judge of the Court in 2016 giving Providence Police Department legal Authority to Arrest and detain Hasim Munir for Arraignment in 2016 NO ARREST RECORD EXIST AT ALL!

4) NO ARRAIGNMENT VALID by Jurisdiction Exist in Ordered Court Records in 2016, No Judge, Transcripts, or record of Appearance ALL Fabricated by Clerk Brown. No Arraignment EXIST! — 3 — (See pgs 8-12)

## Introduction

No Court of Rhode Island has LEGAL Personal Jurisdiction to keep Hasim Munir in Prison. Moreover Providence's Police Department Chief of Police & Rhode Island's Attorney General's Open Government Unit have confirmed #1-4 by correspondant. (Documentary evidence)

Employee's of Rhode Island's Supreme Court are preventing the Judge's from Adjudicating on Constitutional violations of A person Innocence In Rhode Island Judiciary history.

Rhode Island Supreme Court Clerk and Court Appointed Attorney Carl Ricci Are preventing Hasim Munir from being Release pursuant to RULE 9 Motion.

"The first Circuit has held that the standard requires proof that the defendant acted in the face of A pereleved Risk that doing so would violate (the plaintiffs) federally Assured Rights "Iacobucis v Boulter, 193 F.3d, 14,26 (1st Cir 1999) quoting Kostad v American Dental Association 587 U.S. 526, 535-36, 119 S. Ct 2118 144 L. Ed 2d 494 (1999)

Hasim Munir Fourth Amendment rights have been violated in turn violating his Rights to 13th Amendment Prodections "DULY Convicted" Clause

## Introduction

Chief Justice Paul A Suttell has A Special Duty (Oath of Office) to Protect U.S.& RI Constitutional Rights and Guarantee's. He is Also Obligated to Discipline by BAR Association & Professional Conduct Rules Attorneys who violate those Rule. This is to ensure Fundamental Fairness in Court Procedures, he is Also to Report Judges who violate as well. (Judge Robert Krause dismissing PCR's After Hernandez v RI 2010 Ruling)

[Purpose] "The purpose of the Rhode Island Tort Claims Act is to provide effective relief for persons injured as a result of government negligence" Verity v Danti, 585 A.2d 65 (RI 1991)

Rhode Island Created A Statue § 9-31-1 Tort liability of State which states (a) The State of Rhode Island and any political subdivision thereof, including all cities and towns, shall, subject to the period of limitation set forth § 9-1-25 hereby be liable in all Actions of tort in the same manner as A private individual or corporation; provided however, that any recovery in any such Action shall not exceed monetary limitations thereof in forth in this Chapter.($100,000.00)

(b) (1) STATES for Acts or omissions not in good faith or;

(2) For any malicious, willful, wanton, Reckless or grossly negligent acts or ommissions.

— 5 —

[Special Duty]

The special duty doctrine, an exception to the public duty doctrine, will subject the state to liability despite the fact that the activity engaged in by the state was one that a private individual typically would not perform. In order for plaintiffs to come within the special duty doctrine, plaintiff show A breach of some duty owed them in their individual compacity and not merely a breach of some obligation owed to general public" <u>Longtin v D'Ambra Constr. Co, 588 A.2d 1044 (RI 1991)</u>

Paul Suttell has A special Duty as Chief Justice of RI Supreme Court his employee's (clerk & General Counsel) should have informed him of this Miscarraige of Justice. (Since Constitutional Protection is the basic of State Courts)

Paul Suttell has A special Duty as Chief Justice of RI Supreme Court to Appoint Adequate Counsel to Appellate Cases. He's Aware of Carl Ricci's losing record yet he gets Appointed to Lose Cases Not Win. The ones who do win are not on Court Appointed List.

"A defendant may be held liable as a supervisor under Section §1983 if there exist either (1) his or her personal involvement in the Constitutional deprivation; or (2) A sufficient causal connection between the supervisor's wrongful conduct and the Constitutional violation" Hansen v Black 885 F.2d 642, 646 (9th Cir 1989)

— 6 —

Introduction

"STARR 652 F.3d at 1207 "A supervisors own culpable action or inaction in the training, supervision, or control of his subordinates may establish liability" Hansen v Black 885 F.2d 642, 646 (9th Cir 1989)

Paul Asuttell is responsible for the Actions of his Clerks and General Counsel to Appoint Adequate Appellate Counsel. This Court will see in the next 5 pages, that Supreme Court, Superior, nor District Court had Any Jurisdiction to Imprison Hasim Munir As No one ever filed A Police Report.

RI Public Defender's became the VICTIM  Sarah wright, Phil Vinci,
RI Attorney General SAAG (Shannon Signore & Cammile Mckenna,
Katlyn Tracey) Trial Attorneys
RI Justice Netti C Vogel (video Threaten to exclude "New Evidence")
RI Justice Robert Krause (Dismissed a 3 year long PCR Hearing)
RI Supreme Court Justices (Current Case Pending)

STATE OF RHODE ISLAND Judicial Officers became the VICTIM, and without A POLICE REPORT what crime is within Indictment P1-2016-2489A (VOID). Without A WARRANT what Constitutional Right does ANY Rhode Island Court has to keep Hasim Munir in prison. No ARREST who Arrested Hasim Munir? and when was he Arraigned in District Court of Providence without the underlined.

—7—

## Freedom of Information Act

To whom it may concern pursuant to R.I.G.L 38-2-1 and Information open to the public I request the following:

## SECOND TRIAL CONVICTION OF 1ST DEGREE CHILD MOLESTION

1) Any and all records from Providence Police Department of Prisoner Hasim Munir's second police report filed by mom VANESSA Chico in "2016"(year)

2) Any and all records from Providence Police Department of A Affidavit presented to A judge with A Justice's signature to issue A WARRANT OF ARREST in "2016" NAming HASIM MUNIR as that man to be ARRested and detained before arraignment.

3) Any and all records from Providence Police Department of the "2016" ARRest date Hasim Munir was ARRested with his signature once Admitted in Providence Police Department.

4) Any and all District Court Arraignment in "2016" in Providence Sixth Division with JUDGE's NAME, CLERKS NAME, and Stenographer reporter on that DAY for A 1st Degree Child Molestion.

5) That pursuant to R.I.G.L 38-2-1 parties have 10 DAys to respond to the Request for the 1st Degree Child Molestion Second filed Police Report, second obtained court issued WARRANT and Second Arrest by Providence Police in 2016. [After 2015's Dismissed Case]

(-1-)      [8]

C/O Peter Neronha
CC:- Rhode Island Attorney General
Department 150 South Main Providence,
Rhode Island 02903

— Public Records Director
Providence Police Department
328 Washington Street
Providence, Rhode Island 02903

— C/O Chief Justice Alice Gibney
Rhode Island Superior Court
250 Benefit Street (5th Floor)
Providence, RI 02903

— C/O Chief Justice Paul A Suttell
Rhode Island Supreme Court
250 Benefit Street (7th Floor)
Providence, RI 02903

Dated: 9-14-2022

Respectfully submitted
Hasim Munir (PROSE)
Ha___
P.O. Box 8273
Cranston, RI 02920
All Inalienable Rights
reserved by Common Law
and U.S. Constitution
Universal Declaration of
Human Rights Treaty
Natural Man not to be
converted into FICTION
or MARITIME COMMERCIAL
LAW/CODE
Flesh, Blood, Man with A Soul
created by GOD (CREATOR)
First Class Resident of
the Republice
Beneficiary of the TRUST
SOLE OWNER OF THE NAME
17.10.049.352 101.01.63
100.0000 (RI FAN)

(-2-)

[9]

Brett P. Smiley
Mayor

Colonel Oscar L. Perez
Chief of Police

March 3, 2023

### Department of Public Safety, Police Department
*"Building Pride in Providence"*

Mr. Hasim Munir
#51591
P.O. Box 8273
Cranston, RI  02920

RE: Access to Public Records Act (APRA) Request No. 22-1356

Dear Mr. Munir:

Please be aware that this office is in receipt of your correspondence postmarked February 14, 2023 (Your actual letter is undated). It appears from your letter that you are dissatisfied with the close out letter we sent you dated January 17, 2023 wherein it was explained to you that The City of Providence is not in possession of documents responsive to your original request.

Given that you have taken the time to correspond expressing your dissatisfaction with the result of the attempt to provide you with responsive records, we will treat your letter that is postmarked February 14, 2023 as an appeal in accordance with R.I. General Laws Sec. 32-2-8.

For the reasons set forth below, we will unfortunately have to deny your appeal.

The reason your appeal is being denied is that the City of Providence does not have record that are responsive to your request. We therefore cannot provide you with the requested documents. Please see R.I. General Law Sec. 38-2-7(c) (A public body that receives a request to inspect or copy records that do not exist or are not within custody or control shall, in responding to the request in accordance with this chapter, state that it does not have or maintain the requested records.) A public body is not required to produce what it does not maintain. See Catoni v. City of Providence, PR 19-01 (included in this correspondence).

In accordance with R.I.G.L. 38-2-8, you may wish to file a complaint with the Department of the Attorney General or Rhode Island Superior Court.

Sincerely,

Oscar L. Perez
Colonel
Chief of Police

OLP; aem

[10]

325 Washington Street    Providence, Rhode Island  02903    (401) 243-6401 Fax:  (401)243-6464    TDD#: (401)831-3456



# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

150 South Main Street • Providence, RI 02903
(401) 274-4400 • www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*

**VIA USPS ONLY**

March 16, 2023

Hasim Munir
PO Box 8273
Cranston, RI 02920

Re:     Access to Public Records Act ("APRA") Request

Dear Mr. Munir:

This Office is in receipt of your Access to Public Records Act ("APRA") request dated September 15, 2022 but received by this Office on September 23, 2022, in which you seek the following pertaining to "Second Trial Conviction of 1st Degree Child Molestion (sic)":

> "1) Any and all records from Providence Police Department of prisoner Hasim Munir's second police report filed by mom [redacted] in '2016' (year) 2) Any and all records from Providence Police Department of a affidavit presented to a judge with a justice's signature to issue a warrant of arrest in '2016.' Naming Hasim Munir as that man to be arrested and detained before arraignment. 3) Any and all records from Providence Police Department of the '2016' arrest date Hasim Munir was arrested with his signature once admitted in Providence Police Department (sic) 4) Any and all District Court arraignment in '2016' in Providence Sixth Division with Judge's name, Clerk's name, and stenographer reporter on that day for a 1st Degree Child Molestion (sic)"

As you are aware, on October 3, 2022 this Office extended the time to respond to your request twenty (20) business days pursuant to R.I. Gen. Laws § 38-2-3(e) and requested prepayment. This Office received prepayment of $225.00 on February 23, 2023.

Please be advised that we have conducted our search and determined that this Office does not maintain records responsive to your request. As such, no records can be provided. *See* R.I. Gen. Laws §§ 38-2-3(h); 38-2-7(c).

As we engaged in our further review of the case file after receiving prepayment, we were readily able to determine that certain portions of the file were not responsive to your request. As such, we were able to complete this search in less time than initially estimated. In total, this Office spent 4.5 hours completing this request after expending the first free hour provided under the APRA. Pursuant to R.I. Gen. Laws § 38-2-4(b), this Office may charge $67.50 in connection with this

[11]

In re Hasim Munir
Page 2

request. Accordingly, we will be returning $157.50 to you under separate cover. You may wish to contact the Providence Police Department regarding the records you seek.

This decision can be appealed pursuant to R.I. Gen. Laws § 38-2-8(a), which provides that "[a]ny person or entity denied the right to inspect the record of a public body may petition the chief administrative officer of that public body for a review of the determinations made by his or her subordinate." Any appeal may be submitted to this Office in the same manner you submitted your APRA request and should be directed: "Attention: Open Government Unit."

Please feel free to contact me if you have any questions.

Sincerely,

*/s/ Adam D. Roach*
Adam D. Roach
Special Assistant Attorney General

[2]

WHERE FORE NOW, above premises reviewed, the Petitioner moves this Court to Grant him Access to Petition A Suit Against PAUL A SUTTELL pursuant to R.I. G.L §9-31-1 and 28§ 1983 in violation of 1st Amendment "Right to Petition Government" and 13th Amendment "Only Convicted" And others:

MEMORANDUM MOTION IN SUPPORT OF THIS MOTION is ATTACHED (Pgs 46  ) and EXIBITS

TRIAL by JURY

Dated: 4/25/2023

Respectfully submitted
©Hasim Munir #515391

P.O. Box 8273
Cranston, RI 02920
All Inalienable Rights reserved by Common Law, U.S. Constitution, RI Constitution, Preamble to the Constitution, Declaration of the Constitution, Universal Declaration of Human Rights NATURAL LAW (In a batement)
Flesh, Blood, Breathing Man with a Soul created by GOD, not to be converted into FICTION, MARITIME, COMMERCIAL LAW/CODE.
Resident of the World Nationally & Globally
Beneficiary of the TRUST (CESTUI) 17.10. 049.3520 101. 637.100
00000.
SOLE OWNER OF THE NAME ©HASIM MUNIR

U.S. Constitution is NOT A priority in RI Judicial System when combatting against Capital Offense for men of COLOR. No Man of Color has recieved A FAIR, UNBIAS, U.S. Constitutional, RI Constitutional TRIAL in Rhode Island OR A fair Direct Appeal As well.

[13]

Certificate of Service

I Hasim Munir has sent A copy to Rhode Island Chief Justice PAUL A SUTTELL by mail to RI Supreme Court 7Floor 250 Benefit Street Providence, RI 02903; CATJ LICCI Law Office 91 Angell Street Providence, RI 02903; RI Supreme Court Clerks office 7 Floor 250 Benefit St Providence, RI 02903.